IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| MARVIN ALLEN MEAD<br><br>    Plaintiff,<br><br>vs.<br><br>CHARLES PALMER, JASON SMITH, MARY BENSON, BRAD WITTROCK, AND BOB STOUT,<br><br>    Defendants. | No. 13-CV-4017-DEO<br><br>ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT |

## I. INTRODUCTION

Currently before the Court is Defendants' Motion for Partial Summary Judgment. Docket No. 11. The Defendants argue that the Plaintiff's 42 U.S.C. Section 1983 Complaint regarding his dentures should be dismissed. In his Complaint, Mr. Mead, who is an involuntarily committed patient at the Civil Commitment Unit for Sex Offenders (CCUSO) in Cherokee, Iowa, argues that he has been denied appropriate medical care.[1] The parties appeared for hearing on November 8, 2013. After listening to the parties' arguments, the Court took the matter under consideration and now enters the following.

---

[1] The patients at CCUSO "have served their prison terms but in a separate civil trial have been found likely to commit further violent sexual offenses." Iowa Department of Human Services Offer #401-HHS-014: CCUSO, http://www.dhs.state.ia.us/docs/11w-401-HHS-014-CCUSO.pdf, last visited February 24, 2014.

## II. BACKGROUND

Mr. Mead filed his initial pro se Complaint on February 7, 2013. On February 14, 2013, this Court entered an Initial Review Order allowing Mr. Mead's Complaint to proceed and appointing attorney Pamela Wingert to represent Mr. Mead. Docket No. 2. On March 18, 2013, plaintiff filed an Amended Complaint. Docket No. 8. In the Amended Complaint, Mr. Mead set out one primary issue:

> Plaintiff has continued to be in custody at CCUSO under the supervision of Defendants. Plaintiff requires extensive dental care that he is unable to afford. Plaintiff has had many teeth pulled while he has been in the custody of the State of Iowa and this has left him with an inability to chew food properly. He suffers from acid reflux and now is diabetic. Defendants have failed to provide Plaintiff with adequate dental care and have been deliberately indifferent to his need for dental care. Plaintiff continues to suffer from these violations of his constitutional rights and seeks compensatory, punitive and injunctive relief.

Docket No. 8, p. 2-3. On July 31, 2013, the Defendants filed a Motion for Partial Summary Judgment related to Mr. Mead's dentures claim.

At approximately the same time, Mr. Mead filed a second pro se Complaint in this Court, 13-CV-4067-DEO, arguing that his religious rights were being infringed by the Defendants.

2

On August 9, 2013, the Court entered an Initial Review Order in 13-CV-4067 consolidating Mr. Mead's religion claim with the above captioned case. Docket No. 12. On September 20, 2013, Ms. Wingert filed an Amended Complaint which outlined both Mr. Mead's dentures claim and Mr. Mead's religion claim.

On October 14, 2013, Mr. Mead filed a Resistance to the Motion for Partial Summary Judgment. Docket No. 25. On October 21, the Defendants filed a Reply to the Resistance. Docket No. 26. As stated above, the Court held a hearing on the Partial Motion for Summary Judgment on November 8, 2013. Both parties agree that the pending Partial Motion for Summary Judgment applies only to Mr. Mead's dentures claim. The prior hearing and this present Order does not cover the currently pending Motion for Summary Judgment on the religion claim. A hearing on that motion will be scheduled at a later date.

### III. STANDARD

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action

3

>at law, suit in equity, or other proper proceeding for redress . . . .

Summary judgment is appropriate only if the record shows "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P., Rule 56(c). A fact is *material* if it is necessary "to establish the existence of an element essential to [a] party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). There is a *genuine issue* as to a material fact if, based on the record before the court, a "rational trier of fact" could find for the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When considering a motion for summary judgment, a "court must view the evidence in the light most favorable to the nonmoving party . . . ." Hutson v. McDonnell Douglas Corp., 63 F.3d 771 (8th Cir. 1995). This requires a court to draw any reasonable inference from the underlying facts in favor of the nonmoving party and to refrain from weighing the evidence, making credibility determinations, or attempting to discern the truth of any factual issue in a manner which favors the moving party unless there is no reasonable alternative. See

Matsushita, 475 U.S. at 587; and Morris v. City of Chillicothe, 512 F.3d 1013, 1018 (8th Cir. 2008) (citing Thomas v. Corwin, 483 F.3d 516, 526-27 (8th Cir. 2007).

Procedurally, the movant bears the initial burden "of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir. 1992) (citing Celotex, 477 U.S. at 323). Once the movant has carried his burden, the non-moving party is required "to go beyond the pleadings" and through "affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(e)).

**IV. ISSUE**

In his Amended Complaint, Mr. Mead alleges that CCUSO's medical care was deficient because the Defendants refused to provide him dentures. In their Partial Motion for Summary Judgment, Docket No. 11, the Defendants argue that: 1) the Defendants have not been deliberately indifferent to Mr. Mead's serious medical needs; 2) the Defendants are entitled to qualified immunity; 3) the Defendants are not personally

responsible for Mr. Mead' alleged damages; 4) the Defendants are immune from money damages. The Court will examine each issue below.

## V. ANALYSIS

### A. Deliberate Indifference

The Defendants first argue that there is no genuine issue of material fact, because the Plaintiff has failed to allege any facts that would constitute deliberate indifference. The parties generally agree that deliberate indifference is the appropriate standard. See Docket No. 11, Att. 2, p. 2-3 and Docket No. 25, Att. 1, p. 3-4.

At the outset, the Court notes that, "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Youngberg, 457 U.S. at 321-22. There has been some debate regarding the appropriate standard in this type of case. In the context of inmate medical-care claims, Courts have stated that:

> [t]he Eighth Amendment's prohibition against cruel and unusual punishment, which embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency," prohibits punishments which are incompatible with "the evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429

6

> U.S. 97, 102 (1976). It thus requires that the government provide "medical care for those whom it is punishing by incarceration." Id. at 103. The Eighth Amendment safeguards the prisoner against a lack of medical care that "may result in pain and suffering which no one suggests would serve any penological purpose." Id. Accordingly, "deliberate indifference to serious medical needs" of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution. Id. at 104.

Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 828 (7th Cir. 2009) (parallel citations omitted). This deliberate indifference standard is used routinely in prisoner cases related to medical care.

Recently, Courts have applied the deliberate indifference standard to civilly committed individuals. See Senty-Haugen v. Goodno, 462 F.3d 876, 889 (8th Cir. 2006) which applied the deliberate indifference standard to a medical-care claim raised by a patient involuntarily committed as a sexually violent predator under the 14th Amendment. See also Scott v. Benson, 12-3356, 2014 WL 400869 (8th Cir. 2014), stating, "where a patient's Fourteenth Amendment claim is for constitutionally deficient medical care, we apply the deliberate indifference standard from the Eighth Amendment. Senty-Haugen, 462 F.3d at 889-90."

Under the deliberate indifference standard, Mr. Mead must show the Defendants were deliberately indifferent to a serious illness or injury. Senty-Haugen, 462 F.3d at 889. A successful deliberate indifference claim is comprised of both an objective and a subjective element. Farmer v. Brennan, 511 U.S. 825, 834 (1994). First, Mr. Mead must demonstrate that, objectively, the deprivation he suffered was "sufficiently serious; that is, it must result in the denial of the minimal civilized measure of life's necessities." Walker v. Benjamin, 293 F.3d 1030, 1037 (7th Cir. 2002). In the medical care context, this objective element is satisfied when a plaintiff demonstrates that his medical need itself was sufficiently serious. Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997). Second, Mr. Mead must establish that the defendants acted with a "'sufficiently culpable state of mind'" to support liability under § 1983. Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005).

Although negligence or inadvertence will not support a deliberate indifference claim, a plaintiff need not establish that officials actually intended harm from the failure to provide adequate care. Walker, 293 F.3d at 1037. "[I]t is enough to show that the defendants knew of a substantial risk

8

of harm to [the plaintiff] and disregarded the risk." Greeno, 414 F.3d at 653. A successful plaintiff need not show that he was literally ignored in his demands for medical treatment, and a defendant's showing that a plaintiff received some treatment does not resolve the issue conclusively if the treatment was "blatantly inappropriate." Greeno, 414 F.3d at 653-54 (internal citations and quotation omitted). Finally, the Eighth Amendment "protects [a plaintiff] not only from deliberate indifference to his or her current serious health problems, but also from deliberate indifference to conditions posing an unreasonable risk of serious damage to future health." Board v. Farnham, 394 F.3d 469, 479 (7th Cir. 2005). "Deliberate indifference must be measured by the official's knowledge at the time in question, not by 'hindsight's perfect vision.'" Schaub v. VonWald, 638 F.3d 905, 915 (8th Cir. 2011) (citing Lenz v. Wade, 490 F.3d 991, 993 n.1 (8th Cir. 2007)).

Mr. Mead's claim is that the Defendants have been deliberately indifferent by denying him a partial plate of dentures. There seems to be no dispute that Mr. Mead has a lack of teeth that would otherwise qualify for him for a partial plate of dentures. However, the mere fact that Mr.

Mead could use dentures is not enough to establish deliberate indifference.

Under the standard articulated above, deliberate indifference requires both a subjective and objective element. The plaintiff must prove that the Defendants' action or inaction implicated a serious medical need and the Defendants knew they were being indifferent to that serious medical need. Thus, the first question is whether Mr. Mead has a serious need for dentures.

Both the Plaintiff and the Defendants acknowledge that Judge Jarvey in the Southern District of Iowa recently examined the case law surrounding dentures. In that case, Judge Jarvey stated:

> Campbell alleges that Dr. Dunham violated his rights under the Eighth Amendment by deliberately disregarding his need for dentures after removing all of his teeth... A lack of dentures can rise to an objectively serious medical need. See <u>Wynn v. Southward</u>, 251 F.3d 588, 593 (7th Cir. 2001) (concluding that inmate's allegations of bleeding, headaches, "disfigurement," and inability to chew food without dentures demonstrated a serious medical need); <u>Beem v. Davis</u>, 289 Fed. Appx. 305, 307 (10th Cir. 2008) (delay in receiving dentures did not exacerbate inmate's temporal mandibular jaw condition because inmate was "put on a

special diet and was able to eat liquefied foods."). As Magistrate Judge Shields noted in the Report and Recommendation about dentures and dental treatment:

Dental needs, like other medical conditions, range from uncomplicated to threatening. Thus, they may be recognized as a serious medical need in support of a section 1983 deliberate indifference claim. For example, the Eighth Circuit in <u>Boyd v. Knox</u>, found that for another dental procedure a three week delay in dental care supported an Eighth Amendment violation. <u>Boyd v. Knox</u>, 47 F.3d 966, 969 (8th Cir. 1995).

More specific to dentures, courts outside the Eighth Circuit have found that, under certain circumstances, lack of dentures or delay in their production constitutes a serious medical need. See <u>Maclary v. Allen</u>, 2005 WL 2978610, at *2 (D. Del. Nov. 7, 2005) (holding that lack of dentures for over a year was a condition which a lay person would easily recognize as needing a dentist's attention, and was thus a serious medical need. Furthermore, the prisoner alleged that he was unable to chew his food, significantly hindering his ability to eat and therefore lack of dentures "could be expected to lead to substantial and unnecessary suffering and is thus a serious medical need."); <u>Gasaway v. Dist. of Columbia</u>, 1996 WL 225699, at *2 (D .D.C. Apr. 29, 1996) (holding that having no upper teeth and only six lower teeth for 14 months before being provided by the prison with dentures that had been prescribed constituted serious medical need); <u>Dean v. Coughlin</u>, 623 F. Supp. 392, 401 (S.D.N.Y. 1985) (enjoining prison system to provide adequate care for prisoners' serious dental needs, including the provision of dentures

11

> in a timely fashion); but see Harter v. Davis, 2008 WL 786742, at *7 (E.D.Mich. Mar. 24, 2008) (granting prison officials summary judgment where medical records belied Plaintiff's claim that he suffered severe symptoms due to lack of dentures for approximately 18 months). While these later cases are not authoritative, they do suggest that a lay person finds a lack of teeth/dentures for a substantial period of time is an objectively serious medical need.

Campbell v. Dunham, 4:07-CV-00567-JAJ, 2010 WL 7361158, p. 4-5 (S.D. Iowa Oct. 27, 2010).

Based on those cases, its seems quite clear that denying a patient dentures *can* create a sufficiently serious medical need. The question is whether Mr. Mead has alleged facts that would support his allegation that he has a serious medical need for dentures. In his brief, Mr. Mead alleges that:

> Marvin Allen Mead requires extensive dental care to repair and replace damage to his teeth which occurred while he was incarcerated in the custody of the Iowa Department of Corrections. Mr. Mead is missing top teeth which would require a partial dental plate to repair. The partial plate would cost about $1,200.00.
> Without the dentures, he suffers discomfort and cuts on his gums. Mead Deposition pp. 13, 30... While at CCUSO, Mr. Mead learned he suffers from diabetes and acid reflux, has Hepatitis C and high cholesterol. Mead p. 24. He has to be selective in his diet because of the diabetes and with what he is able to eat. Mead p. 28. There are many foods he cannot

> eat because of the problems with his teeth. Mead p. 14. Even cold cereals can cause cuts to the gums. Mead p. 15... Mr. Mead has been without the ability to effectively chew his food and suffered cuts on his gums for a long period of time and requires dentures to remedy this serious medical need... Especially considering Mr. Mead's diagnoses of both Hepatitis C and diabetes, it is important to maintain his health and a healthy diet.

Docket No. 25, Att No. 1, p. 2-4.[2]

The Defendants, obviously, disagree. The Defendants argue that even without teeth (prosthetic or natural) Mr. Mead has been able to consume food and maintain a healthy weight. The Defendants also argue that Mr. Mead has been to see Dr. DeStigter, CCUSO's dental expert, and that Dr. DeStigter has not specifically noted that Mr. Mead has a medical need for dentures. Docket No. 11, Att, 2, p. 6.

---

[2] Mr. Mead's brief also argues that it is unfair to make him pay for dentures when progressing to the next stage of treatment at CCUSO requires Mr. Mead (and all other patients) to save a certain amount of money. However, Ms. Kraemer, counsel for the Defendants, stated during the hearing that CCUSO no longer requires patients to save a set amount of money. Instead, CCUSO now requires patients to show "fiscal responsibility" to progress to the next level of treatment. See also Defendants' Reply Brief, Docket No. 26. It is unclear how the "fiscal responsible" standard would be applied in this situation. However, the Court assumes, without deciding, that if Mr. Mead chose to purchase dentures, when he has an obvious lack of teeth, such a decision would be "fiscally responsible" and would not impede his progression through CCUSO treatment levels.

Under the long established rules, stated above, summary judgment is only appropriate if there is no genuine issue of material fact. Moreover, the Court must view the evidence in the light most favorable to the non-moving party. In this case, the Court is persuaded that Mr. Mead has established a genuine issue of material fact on whether he has a medical need for dentures. He argues that he is in discomfort because of his lack of dentures and suffers cuts on his gums. Additionally, Mr. Mead has to be selective in his diet because of his lack of dentures. It is possible that he cannot eat certain, nutritious food because of his lack of dentures. The Defendants rely on the fact that Mr. Mead has gained weight to show he has no medical need for a partial plate of dentures. However, common sense tells us that gaining weight alone is not (dispositive) evidence of good health, and in some cases gaining weight is actually unhealthy. The dangers of an unhealthy or an uncertain diet are especially clear in this case, because Mr. Mead has numerous serious medical issues, including diabetes and Hepatitis C, that are affected by his diet. Accordingly, it should be for the finder of fact to determine if Mr. Mead has a serious medical need for dentures.

The second deliberate indifference factor is whether the Defendants knew or should have known about the medical need. It seems undisputed that Mr. Mead has needed dentures since he arrived at CCUSO. Accordingly, Mr. Mead has established that the Defendants knew about his alleged serious medical need, and the risk it presented. Mr. Mead has alleged both the subjective and objective deliberate indifference elements. The Court is persuaded that there is genuine issue of material fact regarding whether the Defendants were deliberately indifferent by refusing to provide Mr. Mead a partial plate of dentures. Accordingly, that issue should be reserved for the trying of fact and summary judgment is not appropriate.

**B. Qualified Immunity**

Defendants next argue that they are entitled to a defense of qualified immunity. As government officials, the CCUSO Defendants argue that they are entitled to qualified immunity for the performance of discretionary functions. Davis v. Hall, 375 F.3d 703, 711 (8th Cir. 2004). Qualified immunity exists "to protect public officials from the 'broad-ranging discovery' that can be 'peculiarly disruptive of effective government.'" Anderson v. Creighton, 483 U.S. 635, 646 (1987) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 817 (1982)).

To defeat the Defendants' claim of qualified immunity, the Plaintiff must show how each Defendant's individual conduct violated a "clearly established statutory or constitutional right of which a reasonable person would have known." Id. The Supreme Court has established a two step sequential evaluation process to resolve questions of qualified immunity.[3] Saucier v. Katz, 533 U.S. 194, 201 (2001). The "'threshold question'" is whether the facts, taken in a "'light most favorable to the party asserting the injury,'" demonstrate the defendant's "'conduct violated a constitutional right'" of the plaintiff. Scott v. Harris, 550 U.S. 372, 377 (2007). If there is a "violation of constitutional right, 'the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case.'" Id.

The first question in the sequential evaluation process is straight forward and merely asks if there is a constitutional violation under prevailing law. The second question in the sequential evaluation process requires that

---

[3] More recently, in Pearson v. Callahan, the Supreme Court ruled that the sequential evaluation process outlined in Saucier was not mandatory; lower courts retain discretion whether to follow the Saucier procedure. 555 U.S. 223, 236 (2009).

the "contours of the right . . . be sufficiently clear" such "that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202. "If the law did not put the [official] on notice that his conduct would be clearly unlawful," a motion to dismiss "based on qualified immunity is appropriate." Id. While the first and second steps are quite similar, the second step adds an additional dimension in that "reasonable mistakes can be made as to the legal constraints on particular" official conduct, regardless of whether or not there was an actual constitutional violation. Id., at 205.

In their brief, the Defendants concede that "treating patient's medical needs with deliberate indifference is prohibited by the Constitution." Docket No. 11, Att. No. 2, p. 6-7. However, the Defendants argue that the facts of this case do not establish deliberate indifference. As the Court stated above, the Court is persuaded that the there is a genuine issue of material fact related to Mr. Mead's denture claim. Since the Defendants admit that they knew of their obligation to provide Mr. Mead medical care that is not deliberately indifferent, their claim of qualified immunity must be denied.

17

### C. Personal Responsibility

The Defendants' third argument is that the Defendants are not individually liable for the alleged violations. As stated by the Defendants:

> A Plaintiff may bring a section 1983 claim only against those individuals actually responsible for the constitutional deprivation. <u>Doyle v. Camelot Care Centers, Inc.</u>, 305 F.3d [603] 605, 614-615 (7th Cir. 2002); <u>De[L]e[F]ont v. Beckelman</u>, 264 F. Supp. [2d.] 650, 656, (N.D. Ill 2003). Defendants are only liable for actions for which each is directly responsible. <u>Madewell v. Roberts</u>, 909 F.2d 1203, 1208 (8th Cir. 1990). A general responsibility for supervising operations is insufficient to establish the personal involvement necessary to support liability. <u>Keeper v. King</u>, 130 F.3d 1309, 1314 (8th Cir. 1997). In bringing a 1983 claim a Plaintiff may not rely on the doctrine of respondeat superior, but must allege personal involvement in the wrongdoing.

Docket No. 11, Att. No. 2, p. 7. Additionally, in their Reply, the Defendants argue that:

> Mr. Mead's complaint is about the policy that he must pay for dentures. The policy is set by Dr. Smith. Mr. Mead admitted that he has no complaint about Ms. Benson's care of him. She merely reiterated the policy that she did not set. Mr. Mead's only basis for complaint against Director Palmer is a belief that Director Palmer could override the policy. This is insufficient personal conduct to state an actionable claim against the Director of the Department of Human Services. If the

18

> court disagrees with Defendants' position there is no serious medical need such that summary judgment should be granted in favor of all three defendants, there is no personal conduct at issue for either Mary Benson or Director Charles Palmer.

Docket No. 26, p. 2.

The Court is persuaded that the Defendants are correct that Charles Palmer does not have sufficient personal connection to this case to remain as a defendant. Accordingly, Mr. Mead's dentures claim against Charles Palmer will be dismissed. However, Dr. Smith developed the denture policy and Nurse Benson carried it out. Accordingly, they are the appropriate Defendants in regards to Mr. Meads' dentures claim.

### D. Money Damages

Finally, the Defendants briefly argue that officials of the state are immune from money damages. See Hafer v. Melo, 502 U.S. 21, 25 (1991). Because the remaining Defendants are being sued in their individual capacity for their individual failures while operating under the color of state law, the Defendants' final argument is moot.

### VI. CONCLUSION

For the reason set out above, the Defendants' Motion for Summary Judgment that Defendant Charles Palmer is not

19

personally responsible is granted.  Charles Palmer will be dismissed as a Defendant in relation to Mr. Mead's dentures claim.[4]  However, the Defendants' Motion for Summary Judgment related to Mr. Mead's denture claim against Defendants Ms. Benson and Dr. Smith is denied.  Additionally, Defendants' Motions for Summary Judgment for qualified immunity and money damages are also denied.  Mr. Mead's denture claim against Ms. Benson and Dr. Smith will proceed.

**IT IS SO ORDERED** this 27th day of February, 2014.

*Donald E. O'Brien*
Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa

---

[4]  Charles Palmer remains a Defendant in regards to Mr. Mead's religion claim which is not addressed by the present Motion for Partial Summary Judgment.  A hearing on that motion will be scheduled by separate Order for a later date.