IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| MARVIN ALLEN MEAD<br><br>    Plaintiff,<br><br>vs.<br><br>CHARLES PALMER, JASON SMITH, MARY BENSON, BRAD WITTROCK, AND BOB STOUT,<br><br>    Defendants. | No. 13-CV-4017-DEO<br><br>ORDER |

## I. INTRODUCTION

Currently before the Court is Defendants', "Motion for Summary Judgment On Free Exercise Claim," (Docket No. 31). The Defendants argue that the Plaintiff's 42 U.S.C. Section 1983 Complaint regarding his free exercise of religion claim should be dismissed. In his Complaint, Mr. Mead, who is an involuntarily committed patient at the Civil Commitment Unit for Sex Offenders (CCUSO) in Cherokee, Iowa, argues that he has been denied access to the Pentecostal church of his choice.[1] The parties appeared for hearing on March 14, 2014.

---

[1] The patients at CCUSO "have served their prison terms but in a separate civil trial have been found likely to commit further violent sexual offenses." Iowa Department of Human Services Offer #401-HHS-014: CCUSO,
  http://www.dhs.state.ia.us/docs/11w-401-HHS-014-CCUSO.pdf, last visited June 5, 2014.

After listening to the parties' arguments, the Court took the matter under consideration and now enters the following.

**II. BACKGROUND**

This case involves two consolidated complaints. Mr. Mead filed his first initial pro se Complaint on February 7, 2013, Docket No. 1-1. On February 14, 2013, this Court entered an Initial Review Order allowing Mr. Mead's Complaint to proceed and appointing attorney Pamela Wingert to represent Mr. Mead. Order at Docket No. 2; Complaint at Docket No. 3. On March 18, 2013, the Plaintiff filed an Amended Complaint. Docket No. 8. In the Amended Complaint, Mr. Mead set out one primary issue:

> Plaintiff has continued to be in custody at CCUSO under the supervision of Defendants. Plaintiff requires extensive dental care that he is unable to afford. Plaintiff has had many teeth pulled while he has been in the custody of the State of Iowa and this has left him with an inability to chew food properly. He suffers from acid reflux and now is diabetic. Defendants have failed to provide Plaintiff with adequate dental care and have been deliberately indifferent to his need for dental care. Plaintiff continues to suffer from these violations of his constitutional rights and seeks compensatory, punitive and injunctive relief.

2

Docket No. 8, p. 2-3. On July 31, 2013, the Defendants filed a Motion for Partial Summary Judgment related to Mr. Mead's dentures claim. Docket No. 11. On November 8, 2013, the Court held a hearing on Defendants' Partial Motion for Summary Judgment, Docket No. 28. On February 27, 2014, the Court entered an Order granting in part and denying in part the Motion for Summary Judgment regarding dentures. Specifically, the Court stated:

> the Defendants' Motion for Summary Judgment that Defendant Charles Palmer is not personally responsible is granted. Charles Palmer will be dismissed as a Defendant in relation to Mr. Mead's dentures claim. (Charles Palmer remains a Defendant in regards to Mr. Mead's religion claim which is not addressed by the present Motion for Partial Summary Judgment. A hearing on that motion will be scheduled by separate Order for a later date.) However, the Defendants' Motion for Summary Judgment related to Mr. Mead's denture claim against Defendants Ms. Benson and Dr. Smith is denied. Additionally, Defendants' Motions for Summary Judgment for qualified immunity and money damages are also denied. Mr. Mead's denture claim against Ms. Benson and Dr. Smith will proceed.

Docket No. 36, p. 19-20. On March 17, 2014, the Defendants' appealed that Order to the 8th Circuit Court of Appeals. Docket No. 40.

3

On August 9, 2013, Mr. Mead filed a second pro se Complaint in this Court, 13-CV-4067-DEO, arguing that his religious rights were being infringed by the Defendants. On that date, the Court entered an Initial Review Order in 13-CV-4067-DEO, consolidating Mr. Mead's religion claim with the above captioned case. Docket No. 12. On September 30, 2013, Ms. Wingert filed an Amended Complaint which outlined both Mr. Mead's dentures claim and Mr. Mead's religion claim. Docket No. 20.

On December 23, 2013, the Defendants filed the present Motion for Summary Judgment on free exercise claim. Docket No. 31. Mr. Mead filed a Resistance to the Motion for Partial Summary Judgment on January 24, 2014. Docket No. 34. On January 27, 2014, the Defendants filed a Reply to the Resistance. Docket No. 35. As stated above, the Court held a hearing on the Motion for Summary Judgment on free exercise claim on March 14, 2014 (Docket No. 39), and both parties agree that the pending Motion for Summary Judgment applies only to Mr. Mead's religion claim.

## III. STANDARD

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Summary judgment is appropriate only if the record shows "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P., Rule 56(c). A fact is *material* if it is necessary "to establish the existence of an element essential to [a] party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). There is a *genuine issue* as to a material fact if, based on the record before the court, a "rational trier of fact" could find for the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When considering a motion for summary judgment, a "court must view the evidence in the light most favorable to the nonmoving party . . . ." Hutson v. McDonnell Douglas Corp., 63 F.3d 771 (8th Cir. 1995). This requires a court to draw any reasonable inference from the underlying facts in favor of the nonmoving party and to refrain from weighing the evidence, making credibility determinations, or attempting to discern the truth of any factual issue in a manner which favors the moving party unless there is no reasonable alternative. See Matsushita, 475 U.S. at 587; and Morris v. City of Chillicothe, 512 F.3d 1013, 1018 (8th Cir. 2008) (citing Thomas v. Corwin, 483 F.3d 516, 526-27 (8th Cir. 2007).

Procedurally, the movant bears the initial burden "of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir. 1992) (citing Celotex, 477 U.S. at 323). Once the movant has carried his burden, the non-moving party is required "to go beyond the pleadings" and through "affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a

6

genuine issue for trial.'" Celotex, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(e)).

**IV. ISSUE**

In his Amended Complaint, Mr. Mead argues that he has been denied his right to practice his religion while at CCUSO because Defendants have refused to provide and refused to allow a minister of Plaintiff's faith to minister to him in a Sunday service as Plaintiff has requested repeatedly. Plaintiff is a follower of the Pentecostal faith and has been denied the right to practice his religion. Docket No. 20, p. 3. In their Motion for Summary Judgment, the Defendants argue that: (1) Mr. Mead has failed to articulate a constitutional violation; (2) The Defendants are entitled to qualified immunity; (3) the Defendants are not personally responsible; and (4) the Defendants are immune from money damages. The Court will examine each issue below.

**V. ANALYSIS**

**A. Facts**

Mr. Mead's claim is that he has been denied his right to free exercise of religion by the Defendants. The facts of this situation are mostly undisputed.

7

Mr. Mead is a patient at CCUSO and has been at CCUSO since 2011. The Defendants are members of CCUSO's administration. Mr. Mead belongs to the Pentecostal faith. The Pentecostal church is protestant Christian denomination. Members of the Pentecostal faith participate in energetic displays of their faith, including the speaking of tongues. The Defendants have no institutional problem with Mr. Mead exercising his faith. The issue is whether and to what extent the Defendants can, or should, facilitate Mr. Mead's faith.

CCUSO has a resident spiritual provider, Defendant Dr. Stout, who is a Christian Baptist pastor. CCUSO holds weekly non-denominational, Christian, religious services. Dr. Stout also provides other religious services to CCUSO patients, including one-on-one meetings, bible study and counseling. Dr. Stout routinely contacts religious leaders and invites them to provide services at CCUSO, including Catholic priests, Jewish rabbis, and native American spiritual leaders. Since Mr. Mead has arrived at CCUSO, Dr. Stout has tried to secure a Pentecostal minister who would be willing to come to CCUSO, but the local Pentecostal churches have declined his invitation to minister at CCUSO. Dr. Stout and CCUSO also

provides religious materials to CCUSO patients, including videos from a Pentecostal church in Sioux City, Iowa.

For the most part, Mr. Mead does not participate in the religious services offered by CCUSO or Dr. Stout, because Mr. Mead feels Dr. Stout does not support tenants of the Pentecostal faith, including speaking in tongues. However, Mr. Mead does take advantage of and use Pentecostal materials provided by CCUSO, including the videos from Sioux City.

The bulk of the parties' evidence deals with Pastor Jerry Greenwalt. Pastor Greenwalt a is Pentecostal minister with a church in Storm Lake, Iowa. Pastor Greenwalt goes to the CCUSO facility in Cherokee, Iowa, and pastors to another CCUSO patient, Cory West. The parties deposed Pastor Greenwalt and he stated that he goes to CCUSO about once a month to meet with Mr. West.

When Mr. Mead became aware of Pastor Greenwalt, he asked Pastor Greenwalt to meet with him. However, at some point, Mr. West had told Pastor Greenwalt that Pastor Greenwalt could only minister to one CCUSO patient at a time. Based on that mis-information, Pastor Greenwalt believed that he could not minister to Mr. Mead. Accordingly, he initially declined Mr.

Mead's request. However, when Dr. Stout became aware of the situation, he told Pastor Greenwalt that he could minister to both Mr. West and Mr. Mead. It is undisputed that the Defendants have made it clear to Pastor Greenwalt that he could minister to Mr. Mead. However, Pastor Greenwalt has chosen not expand his role at CCUSO or minister to Mr. Mead.[2]

**B. Free Exercise Claim**

Mr. Mead argues that the Defendants have infringed his right to exercise his religion. Specifically, he argues that CCUSO has failed to provide him access to a Pentecostal minister. In <u>Youngberg v. Romeo</u>, 457 U.S. 307 (1982), the Supreme Court of the United States held that the Fourteenth Amendment of the United States Constitution determines the rights of individuals who have been involuntary committed to a facility. <u>Id.</u> at 312. Although residents at state institutions do have constitutionally protected interests, these rights must be balanced against the reasons put forth by the State for restricting their liberties. <u>Id.</u> at 321.

---

[2] Pastor Greenwalt indicated that he has many obligations and does not know if he has the time to take on additional worshipers at CCUSO. Additionally, there is some indication in the record that Pastor Greenwalt's congregation is not fully supportive of him ministering at CCUSO.

Inmates clearly retain their First Amendment right to free exercise of religion in prison, O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). It is obvious then that civil detainees also retain their First Amendment Rights.

In Turner v. Safley, 482 U.S. 78 (1987), the Court found that a prison regulation infringing on an inmate's constitutional rights is valid so long as it is reasonably related to a legitimate penological interest. Id. at 89. The Court also recognized that deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security. Id.

Although the Eighth Circuit has not addressed the issue, Courts have applied Turner in analyzing constitutional claims by civilly committed sexually violent predators. See Thompson v. Vilsack, 328 F. Supp. 2d 974 (S.D. Iowa 2004)(Judge Pratt applied Turner to a claim that co-payment for Kosher meals violated civilly committed sexual predator's First Amendment rights); see also Rivera v. Rogers, 2006 WL 1455789 (D. N.J. 2006)(applying Turner in analyzing claims of sexually violent predators (SVPs) that opening of their packages violated their First Amendment rights); Willis v. Smith, 2005 WL 550528 (N.D.

11

Iowa 2005)(Magistrate Zoss) (noting that status of sexually violent predators was substantially similar to that of prisoners and applying <u>Turner</u> to SVP claims concerning mail handling procedures); <u>Gilmore v. Kansas</u>, 2004 WL 2203458 (D. Kan. 2004) (noting <u>Turner</u> standard in regard to claims of denial of razors, lighters, electricity, use of a washer and dryer, and freedom to move about the facility); see also <u>Hydrick v. Hunter</u>, 449 F.3d 978 (9th Cir. 2006)(stating that "[a]s is the case with prisoners, civilly committed persons certainly retain those First Amendment rights not inherently inconsistent with the circumstances of their detention.").

Accordingly, this Court will analyze the Plaintiffs' free exercise complaint under the <u>Turner</u> framework. "A discussion of constitutional violations in a prison setting requires a two-step analysis. First, [the court] must determine whether the liberty interest asserted by an inmate is an interest protected by the Constitution. If [the court] find[s] a protected liberty interest exists, [the court] must balance this interest against a State's interest in prison safety and security." <u>Goff v. Harper</u>, 235 F.3d 410, 413-14 (8th Cir. 2000) judgment reinstated, 96-1018, 2002 WL 34541628 (8th Cir.

Jan. 15, 2002). Under Turner, a prison regulation that impinges on inmates' constitutional rights ... is valid if it is reasonably related to legitimate penological interests. Turner, 482 U.S. at 89.

"Turner employs a four-factor test to resolve this inquiry: (1) whether there is a rational relationship between the regulation and the legitimate government interest advanced; (2) whether the inmates have available alternative means of exercising the right; (3) the impact of the accommodation on prison staff, other inmates, and the allocation of prison resources generally; and (4) whether there are ready alternatives to the regulation. Freeman v. Texas Dept. of Criminal Justice, 369 F.3d 854, 860 (5th Cir. 2004) (internal citations omitted).

In this case, it is clear that the Defendants have not infringed on Mr. Mead's right to exercise his religion. At the outset, it is important to note that Courts have "consistently permitted prisons to take into account the level of inmate interest in a particular religion when determining whether to hold services..." Colvin v. Caruso, 605 F.3d 282, 291 (6th Cir. 2010). In this case, there simply is no

13

evidence that the Defendants have taken any action that infringes Mr. Mead's right to practice his religion. Mr. Mead is free to practice and believe his Pentecostal faith. The Defendants have allowed Mr. Mead to watch videos of Pentecostal services from Sioux City. Dr. Stout has tried to find a Pentecostal minister to minister to Mr. Mead.

At the outset of this case, there was an allegation that the Defendants had told Pastor Greenwalt that he could not minister to Mr. Mead. However, that allegation has been clearly rebuffed by the record, including Pastor Greenwalt's deposition testimony. See O'Neil v. City of Iowa City, 496 F.3d 915, 917 (8th Cir. 2007) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)), stating: "the district court is to "view those facts in a light most favorable to the non-moving party as long as those facts are not so 'blatantly contradicted by the record ... that no reasonable jury could believe [them].'"

Based on the record now before the Court, there is no reasonable dispute about Pastor Greenwalt. Pastor Greenwalt is aware of Mr. Mead's desire to have Pentecostal services at CCUSO. Pastor Greenwalt is currently considering what

14

services he can provide at CCUSO, but, as of now, has made the personal decision not provide ministerial services to Mr. Mead. This was and is Pastor Greenwalt's decision. There is no evidence that the Defendants had anything to do with it.

As stated in the Defendants' brief, based on those facts, Mr. Mead has failed to allege a constitutional violation under the Turner framework: 1) There is a rational relationship between CCUSO's religious regulations and a legitimate government interest. The Defendants provide various non-denominational religious services and provide specific Pentecostal material and videos to Mr. Mead. The Defendants do not have the authority to compel a Pentecostal minister to come to CCUSO. But CCUSO has made Pastor Greenwalt aware that he is welcome to minister to Mr. Mead if he chooses to do so. 2) Mr. Mead is allowed alternate means to exercise his faith. As mentioned above, the Defendants have provided Pentecostal videos. Additionally, Mr. Mead is allowed to attend other, non-denominational Christian services, which Pastor Greenwalt testified are similar to Pentecostal services. 3) The Defendants are willing to let a Pentecostal minister pastor to Mr. Mead. None appear to be willing. The Defendants are

attempting to provide Mr. Mead an opportunity to exercise his religion that is within CCUSO's resources. 4) There is no ready alternative to this situation. The Defendants provide Mr. Mead access to Pentecostal videos and other Pentecostal material. They have told Pastor Greenwalt he can minister to Mr. Mead. They have tried to get other Pentecostal ministers to come to CCUSO. But, all they can do is ask. The Defendants do not have the power to compel a minister to come to CCUSO. In short, the Defendants are doing all that they can. As long as they continue to do so, Mr. Mead does not have a free exercise claim under the <u>Turner</u> framework discussed above. Accordingly, the Court must grant the Defendants' Motion for Summary Judgment, Docket No. 31.

### C. Other Issues

Defendants next argue that they are entitled to a defense of qualified immunity. However, because the Court found that Mr. Mead has failed to articulate a free exercise claim, the Court need not reach that issue. Similarly, the Court need not reach the Defendants' arguments that they are not personally responsible and that they are immune from money damages.

## VI. CONCLUSION

For the reason set out above, the Defendants' Motion for Summary Judgment on the free exercise claim (Docket No. 31) is **GRANTED**. The Plaintiff's free exercise of religion claim is dismissed. However, this Order does not affect the other portion of Mr. Mead's case, regarding his request for dentures, that is currently on appeal.[3]

**IT IS SO ORDERED** this 6th day of June, 2014.

*Donald E. O'Brien*
Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa

---

[3] Defendant Stout is not a Defendant to Mr. Mead's other deliberate indifference claim. Accordingly, he is dismissed from this case. Additionally, Defendant Palmer was previously dismissed from Mr. Mead's deliberate indifference claim. See Docket No. 36. Accordingly, based on the above ruling dismissing Mr. Mead's free exercise claim, Charles Palmer is also dismissed from this case.

17